1   **CHARLES T. HUGGINS, JR., P.C.**
2   Jeffrey F. Peil (Georgia Bar No. 967902)
3   jpeil@hugginsfirm.com
    7013 Evans Town Center Blvd., Suite 502
4   Evans, Georgia 30809
    Telephone: (706) 210-9063
5   Facsimile (706) 210-9282
6
7   *Attorney for Defendant Premium*
    *Nutraceuticals, LLC*
8

9

### UNITED STATES DISTRICT COURT

10

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12

| | |
|---|---|
| ROBERT MATUS, individually, and on behalf of all others similarly situated; | Case No.: 5:15-cv-01851-DDP-DTB |
| | CLASS ACTION |
| Plaintiffs, | **Hon. Dean D. Pregerson** Courtroom 3 |
| v. | **NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** [Fed. R. Civ. Proc. 12(b)(2), 12(b)(6), 9(b)] |
| PREMIUM NUTRACEUTICALS, a Georgia limited liability company; and DOES 1-20, Inclusive, | |
| Defendants. | |
| | Date:    December 7, 2015 Time:    10:00 a.m. |

26      PLEASE TAKE NOTICE that, on December 7, 2015, at 10:00 a.m., or as

27   soon thereafter as the Court is available, in Courtroom 3 of the federal courthouse

28   located at 312 North Spring Street, Los Angeles, California 90012-4701,

CHARLES T HUGGINS JR P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

Defendant Premium Nutraceuticals, LLC ("Premium") will and hereby does move the Court to dismiss in its entirety the putative class action complaint (the "Complaint") filed in California State Court on August 3, 2015 by Plaintiff Robert Matus and removed to this Court on September 9, 2015 by Defendant Premium Nutraceuticals, LLC in the above-captioned action (the "Action") pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 9(b). The grounds for this motion are as follows: (1) Plaintiffs lack personal jurisdiction over Defendant; (2) the Complaint fails to state any plausible legal claim; and (3) the Complaint fails to satisfy pleading standards.

Defendant's motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss the Complaint, the accompanying exhibits to Defendant's Motion to Dismiss the Complaint which the Defendant asks the court to take Judicial Notice of pursuant to the incorporation doctrine, any additional briefing on this subject, and the evidence and arguments that will be presented to the Court at the hearing on this matter.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 15, 2015 at 1:00 p.m. P.S.T.

Respectfully, submitted,

Dated: October 25, 2015

**CHARLES T. HUGGINS, JR., P.C.**
By: s/ Jeffrey F. Peil
Jeffrey F. Peil (Georgia Bar No. 967902)
jpeil@hugginsfirm.com
7013 Evans Town Center Blvd., Suite 502
Evans, Georgia 30809
Telephone: (706) 210-9063
Facsimile (706) 210-9282
Admitted Pro Hac Vice

*Attorney for Defendant Premium Nutraceuticals, LLC*

CHARLES T HUGGINS JR P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................1

II. FACTUAL ALLEGATIONS ................................................................2

III. LEGAL STANDARD .........................................................................7

IV. LEGAL ARGUMENT .........................................................................8

    A. Plaintiff cannot establish that this Court has personal jurisdiction over Premium ....................................................................................8

        1. Plaintiff cannot establish specific jurisdiction over Premium ........9

        2. Plaintiff cannot establish general jurisdiction over Premium .......12

    B. The Plaintiff's claims are insufficient, as pleaded, to sustain a claim against Premium....................................................................................13

        1. Plaintiff bases his claims for violations of the CLRA, FAL, and UCL on a lack of substantiation argument that fails as a matter of law ..................................................................................................13

        2. Plaintiff's remaining claims are for mere puffery, and are not actionable under the UCL ...........................................................17

        3. Plaintiff has not alleged an injury in fact, a necessary element under the CLRA, FAL, and UCL (Counts 1-III), respectively .....20

        4. Plaintiff's negligent misrepresentation claim (Count IV) fails because he has made no plausible factual allegations that Defendant's claims are unsubstantiated ......................................22

    C. All of Plaintiff's claims sound in fraud, but the FAC does not satisfy Rule 9(b) ...............................................................................................23

V. CONCLUSION ...................................................................................24

CHARLES T HUGGINS JR PC
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

## TABLE OF AUTHORITIES

### Cases

*Alexander v. Circus Circus Enterprises, Inc.*, 939 F.2d 847 (9th Cir. 1991) .........8

*AM Trust v. UBS AG*, No. C-14-4125 PJH, 2015 U.S. Dist. LEXIS 1062

    (N.D. Cal., Jan. 29, 2015) ...............................................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)......................................................1,8,12,20

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082

    (9th Cir. 2000) ................................................................................................8,12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..........................................1,2,7

*Bily v. Arthur Young & Co.*, 834 P.2d 745 (Cal. 1992)........................................22

*Brand v. Menlove Dodge*, 796 F.2d 1070 (9th Cir. 1986)....................................12

*Bronson v. Johnson & Johnson*, No. C 12-04184 CRB, 2013 U.S. Dist.

    LEXIS 54029 (N.D. Cal. Apr. 16, 2013) ......................................................14

*Brown v. GNC Corp.*, 789 F.3d 505 (4th Cir. 2015) ....................................16,19

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ...................................9,19

*Calder v. Jones*, 465 U.S. 783 (1984) ...................................................................8

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242

    (9th Cir. 1990) .................................................................................................17

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) ................................................13

*Daimler AG v. Bauman*, 134 S. Ct 746 (2014).....................................................13

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) .....................13

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001)............................................10

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ............................7,8,9,10

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004) .............................23

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011) ......8,9

*Hana Fin., Inc. v. Hana Bank*, 500 F. Supp. 2d 1228 (C.D. Cal. 2007) .................7

*Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408 (1984) ...................13

*Hill v. Roll Internat. Corp.*, 128 Cal. Rptr. 3d 109 (Cal. App. 1st Dist. 2011) .....21

C H A R L E S  T  H U G G I N S  J R  P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070
(N.D. Cal. 2011)..................................................................................23

*In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224 (N.D. Cal. 2012)................14

*In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009) ............................................20

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945)..................................8

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)..............................23,24

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) ...............................9

*Kouba v. Renzenberger, Inc.*, Case No. C10-159 TUC FRZ (GEE), 2010
U.S. Dist. LEXIS 135743 (D. Ariz. May 14, 2010).....................................7

*Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011).................................21

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) ..................................7

*Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512 (S.D.N.Y. 2009) .................................19

*Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194 (9th Cir. 1998).......................13

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ...........7

*Semegen v. Wedner*, 780 F.2d 727 (9th Cir. 1985)..................................................8

*Senne v. Kan. City Royals Baseball Corp.*, No. 14-cv-00608-JCS, 2015 U.S.
Dist. LEXIS 66170 (N.D. Cal. May 20, 2015) .................................7,10,12

*Shaffer v. Heitner*, 433 U.S. 186 (1977)................................................................8,9

*Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990).....................................................9

*Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir. 1990)............................11

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ............................................8

*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir. 2006) ................12

*U.S. v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .......................................................13

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)............................23

*Walden v. Fiore*, 134 S. Ct. 1115 (2014)................................................................9

//

//

//

CHARLES T HUGGINS JR PC
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

**Statutes**

CAL. CIV. CODE § 1710, subd. 2 ................................................................22

CAL. CIV. CODE § 1750, *et seq.* .................................................................6

CAL. CIV. CODE § 1780(a) ..........................................................................20

CAL. BUS & PROF. CODE § 17200, *et seq.* ................................................7

CAL. BUS & PROF. CODE § 17204 ..............................................................20

CAL. BUS & PROF. CODE § 17500, *et seq.* ................................................6

CAL. BUS & PROF. CODE § 17535 ..............................................................20

CAL. CIV. PROC. CODE § 410.10 .................................................................7

**Rules of Civil Procedure**

FED. R. CIV. P. 9(b)................................................................................1,23

FED. R. CIV. P. 12(b)(2)..........................................................................1,7

FED. R. CIV. P. 12(b)(6)..........................................................................1,7

FED. R. CIV. P. 15(a)(1)(B)......................................................................10

FED. R. CIV. P. 81(c)(2) ............................................................................1

**Other Authorities**

A.J. Maxwell, et al., *Randomized trial of a medical food for the dietary management of chronic, stable angina*, 39(1) J. of the Am. Coll. of Cardiology 37-45 (Jan. 2, 2002) ....................................................5

Chen, J., et al. *Effect of oral administration of high-dose nitric oxide donor L-arginine in men with organic erectile dysfunction: Results of a double-blind, randomized, placebo-controlled study*, 83(3) BRITISH J. OF UROLOGY INT'L 269-73 (Feb. 1999) ................................................................4

C.M. Meston and M. Worcel, *The effects of yohimbine plus L-arginine glutamate on sexual arousal in postmenopausal women with sexual arousal disorder*, 31(4) ARCHIVES OF SEXUAL BEHAVIOR 323-32 (Aug. 2002)..................4,17

CHARLES T HUGGINS JR PC
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

EARL MINDELL, PH.D, EARL MINDELL'S ANTI-AGING BIBLE, 23-24 (1996) ...........5

E.D. Michelakis, et al., *The NO - K+ channel axis in pulmonary arterial hypertension: Activation by experimental oral therapies*, 543 ADVANCES IN EXPERIMENTAL MED. AND BIOLOGY 293-322 (2003)...................................5

E.O. Laumann, M.D., et al., *Sexual dysfunction in the United States: prevalence and predictors*, 281(6) J. OF THE AM. MED. ASS'N 537-44 (Feb. 10, 1999) ..................................................................................3

*Ingredients*, VYDOX, http://www.vydox.com/pages.php%3FpID%3D8%26 (last visited Sep. 14, 2015)...................................................................18

J.A. Moody, *Effects of long-term oral administration of L-arginine on the rat erectile response*, 158(3) THE J. OF UROLOGY 942-47 (Sep. 1997) ..............4

Jonathan Wright, M.D., *Maximize your vitality & potency for men over 40*, SMART PUBLICATIONS, 225 (1999) (available at http://www.smart-publications.com/articles/l-arginine-the-prosexual-nutrient-with-numerous-health-benefits#fn-ref-360-2)............................................................4,17,18

KENNETH H. COOPER, M.D., ADVANCED NUTRITIONAL THERAPIES, 87-88, 93, 94 (1997) ................................................................................5

*L-Arginine: The Pro-Sexual Nutrient with Numerous Health Benefits*, VYDOX, http://vydox.com/pages.php?pID=7&CDpath=3 (last visited Oct. 25, 2015) ................................................................................3,14

M.A. Broeders, et al., *Hypercholesterolemia enhances thromboembolism in arterioles but not venules: complete reversal by L-arginine*, 22(4) ARTERIOSCLEROSIS, THROMBOSIS, AND VASCULAR BIOLOGY 680-85 (Apr. 1, 2002) ................................................................................5

M. Amrani, *The effect of L-arginine on myocardial recovery after cardioplegic arrest and ischemia under moderate and deep hypothermia*, 96(9 Suppl.) CIRCULATION II 274-79 (Nov. 4, 1997)........................................5

//

CHARLES T HUGGINS JR P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

P.H. Lin, et al., *L-arginine improves endothelial vasoreactivity and reduces thrombogenicity after thrombolysis in experimental deep venous thrombosis*, 38(6) J. OF VASCULAR SURGERY 1396-1403 (Dec. 2003) .........5

*Phony Cures for Erectile Dysfunction*, FEDERAL TRADE COMMISSION, http://www.consumer.ftc.gov/articles/0202-phony-cures-erectile-dysfunction (last visited Oct. 25, 2015) (emphasis added) .............................................15

SHELDON SAUL HENDLER, M.D., THE DOCTOR'S VITAMIN AND MINERAL ENCYCLOPEDIA, 209-215  (1990) ..................................................................5

T. Klotz, et al., *Effectiveness of oral L-arginine in first-line treatment of erectile dysfunction in a controlled crossover study*, 64(4) UROLOGIA INTERNATIONALIS 220-23 (1999) ......................................................4,16,18

T.Y. Ito, et al., *A double-blind placebo-controlled study of ArginMax, a nutritional supplement for enhancement of female sexual function*, 27(5) J. OF SEX AND MARITAL THERAPY 541-49 (Oct.-Dec. 2001).......................4,17

VYDOX, http://www.vydox.com (last visited Oct. 25, 2015) .................................15

*What are possible side effects?*, VIAGRA, https://www.viagra.com/learning/what-are-possible-side-effects (last visited Oct. 25, 2015) ..................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CHARLES T HUGGINS JR P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

CHARLES T HUGGINS JR P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Premium Nutraceuticals, LLC ("Premium") respectfully submits this memorandum in support of its motion to dismiss Plaintiff Robert Matus' ("Plaintiff's") First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(2), 12(b)(6), and 81(c)(2).

## I.   INTRODUCTION

Plaintiff's FAC is riddled with conclusory allegations and threadbare recitals of elements, which in no way state a claim upon which relief can be granted. In fact, Plaintiff's FAC is the archetypical example of frivolity that the United States Supreme Court has sought to eliminate with its decisions in *Iqbal* and *Twombly*. What is even more disturbing about Plaintiff's allegations, however, is that Premium has never sold any products to Plaintiff. Sure, Plaintiff alleges that he purchased Vydox, but that he did so through some third-party reseller of the product. He does not allege, however, how much Vydox he purchased, when it was purchased, how it was purchased, what he paid for it, and how much of it he consumed. Because Plaintiff admits that he never purchased a single product from Premium at all, as a threshold manner, this court lacks personal jurisdiction over this dispute.

Even if it is determined that Plaintiff's purchase of Vydox from a reseller is sufficient to confer personal jurisdiction over Premium, the mere fact that Plaintiff did not "obtain the results promised" does not give rise to a private right of action. Plaintiff does not allege which promised results he failed to obtain or how he measured said failure. Stated more succinctly, Plaintiff has not pleaded any facts. That does not stop him, however, from seeking to represent a putative nationwide class of supplement purchasers who did not obtain all of that supplement's promised results. If Plaintiff's claims are allowed to stand, then anyone who claims that Tums was ineffective at alleviating his particularly bad case of indigestion could be the named plaintiff in a class action against

CHARLES T HUGGINS JR P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

GlaxoSmithKline—an absurd result.

Even more troubling for Plaintiff is the fact that he alleges to have relied on statements made at http://www.vydox.com in making his decision to purchase Vydox. That website, and all of its component pages containing the allegedly offending statements, are thus incorporated into Plaintiff's FAC. There are fifteen scientific studies contained on those pages supporting the claims made by Premium regarding the efficacy of Vydox. Despite having allegedly reviewed these studies, Plaintiff advances the bald, conclusory, and ultimately unsupportable claim that there is no scientific evidence suggesting Vydox does what Premium claims it does. Because of this, Plaintiff's claims fail as a matter of law, and his lawsuit must be dismissed with prejudice.

## II.   FACTUAL ALLEGATIONS[1]

Plaintiff purchased a supplement known as Vydox for approximately $30.00 from an unidentified internet reseller for his personal use. FAC [ECF No. 20] ¶ 5. That purchase price represents a significant discount from the actual retail price of $84.95 per package. Premium manufactures, markets, and sells Vydox, a dietary supplement with a daily male performance formula. FAC ¶ 6; *see also* Vydox Label ("Vydox Label", Ex. 1), Declaration of Joseph Testino, ¶ 13 ("Testino Decl.", Ex 2). Vydox contains over nine different ingredients in a proprietary blend. Vydox Label Ex. 1. Those ingredients are L-arginine, Bioperine$^{TM}$ (a patented substance made primarily of piper nigrum), yohimbe hydrochloride, epimedium leaf extract (commonly known as horny goat weed), fructus serenoae (commonly known as saw palmetto berry), Asian red ginseng, muira puama bark extract, ginko biloba leaf, and damiana. Vydox Label Ex. 1; Testino Decl. Ex. 2 ¶ 15.

---

[1] The factual allegations from the Complaint are taken as true only for purposes of the motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that a court takes well-pleaded facts in the complaint as true for purposes of deciding a motion to dismiss).

CHARLES T HUGGINS JR P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

Premium is a Georgia limited liability company organized under the laws of the State of Georgia. Declaration of Jeffrey F. Peil, ¶ 9 ("Peil Decl.", Ex. 4). Its principal place of business is in Martinez, Georgia. *Id.* Its registered agent is its attorney, who is located in Evans, Georgia. *Id.* None of its officers or employees have ever traveled to California for business purposes, and it does not maintain an office in California. Testino Decl., Ex. 2, ¶ 11, 12. Premium markets its products through its website located at http://www.vydox.com. *Id.* at ¶ 13. It does not directly target sales toward California residents. *Id.* 1.4% of its total sales revenues are derived from sales to California residents. Id. at ¶ 14; FAC ¶ 9.

The Vydox label does not contain any of the statements Plaintiff alleges in his FAC, but does contain a disclaimer that reads: "These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease." Vydox Label Ex. 1. In addition, the disclaimer on Premium's website reads:

> These products have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease. Terms and Conditions: All clinical studies referenced on this site, for Vydox ingredients, are REAL and are readily available for public viewing. Individual results when using Vydox may vary from those provided on this site. VYDOX, http://www.vydox.com (last visited Oct. 25, 2015).

The clinical studies mentioned above are cited on the Vydox website. *L-Arginine: The Pro-Sexual Nutrient with Numerous Health Benefits*, VYDOX, http://vydox.com/pages.php?_pID=7&CDpath=3 (last visited Oct. 25, 2015). Those studies are as follows: **(1)** E.O. Laumann, M.D., et al., *Sexual dysfunction in the United States: prevalence and predictors*, 281(6) J. OF THE AM. MED. ASS'N 537-44 (Feb. 10 1999) (concluding that sexual dysfunction is an important public health concern, and emotional problems likely contribute to the experience of these problems); **(2)** Jonathan Wright, M.D., *Maximize your vitality & potency*

*for men over 40*, SMART PUBLICATIONS, 225 (1999) (available at http://www.smart-publications.com/articles/l-arginine-the-prosexual-nutrient-with-numerous-health-benefits#fn-ref-360-2) (concluding that L-arginine has been shown to improve blood flow to the genital area by dilating blood vessels and helping the penis to enlarge to its full capacity); **(3)** C.M. Meston and M. Worcel, *The effects of yohimbine plus L-arginine glutamate on sexual arousal in postmenopausal women with sexual arousal disorder*, 31(4) ARCHIVES OF SEXUAL BEHAVIOR 323-32 (Aug. 2002) (concluding that ingesting yohimbine and L-arginine substantially increased sexual arousal in test subjects); **(4)** T.Y. Ito, et al., *A double-blind placebo-controlled study of ArginMax, a nutritional supplement for enhancement of female sexual function*, 27(5) J. OF SEX AND MARITAL THERAPY 541-9 (Oct.-Dec. 2001) (concluding that subjects who ingested extracts of ginseng, gingko, damiana, L-arginine, multivitamins, and minerals showed notable improvements in sexual desire, frequency of sexual intercourse, frequency of orgasm, and clitoral sensation); **(5)** Chen, J. et al. (1999). *Effect of oral administration of high-dose nitric oxide donor L-arginine in men with organic erectile dysfunction: Results of a double-blind, randomized, placebo-controlled study*, 83(3) BRITISH J. OF UROLOGY INT'L 269-73 (Feb. 1999) (concluding that L-arginine in high doses caused significant improvement of sexual function in men with erectile dysfunction); **(6)** T. Klotz, et al. *Effectiveness of oral L-arginine in first-line treatment of erectile dysfunction in a controlled crossover study*, 64(4) UROLOGIA INTERNATIONALIS 220-23 (1999) (finding that in 20% of study patients, L-arginine led to a significant improvement in sexual dysfunction and that in all patients no adverse effects occurred); **(7)** J.A. Moody, *Effects of long-term oral administration of L-arginine on the rat erectile response*, 158(3) THE J. OF UROLOGY 942-47 (Sep. 1997) (concluding that dietary supplements containing L-arginine for the treatment of erectile dysfunction are viable); **(8)** KENNETH H. COOPER, M.D., ADVANCED

CHARLES T HUGGINS JR P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

CHARLES T HUGGINS JR PC
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

NUTRITIONAL THERAPIES, 87-88, 93, 94 (1997) (concluding that L-arginine helps build muscle mass, enhance immune function, improve blood pressure, increase memory, and speed wound healing); **(9)** SHELDON SAUL HENDLER, M.D., THE DOCTOR'S VITAMIN AND MINERAL ENCYCLOPEDIA, 209-215  (1990) (concluding that L-arginine helps build muscle mass, enhance immune function, improve blood pressure, increase memory, and speed wound healing); **(10)** EARL MINDELL, PH.D, EARL MINDELL'S ANTI-AGING BIBLE, 23-24 (1996) (concluding that L-arginine helps build muscle mass, enhance immune function, improve blood pressure, increase memory, and speed wound healing); **(11)** M.A. Broeders, et al., *Hypercholesterolemia enhances thromboembolism in arterioles but not venules: complete reversal by L-arginine.* 22(4) ARTERIOSCLEROSIS, THROMBOSIS, AND VASCULAR BIOLOGY 680-85 (Apr. 1, 2002) (concluding that L-arginine completely reverses embolization by helping blood flow, reducing the risk of blood clots and stroke); **(12)** P.H. Lin, et al, *L-arginine improves endothelial vasoreactivity and reduces thrombogenicity after thrombolysis in experimental deep venous thrombosis*, 38(6) J. OF VASCULAR SURGERY 1396-1403 (Dec. 2003) (concluding that L-arginine helps preserve the endothelial wall contained in blood cells and helps preserve their function, which in turn reduces the risk of blood clots and stroke); **(13)** E.D. Michelakis, et al., *The NO - K+ channel axis in pulmonary arterial hypertension: Activation by experimental oral therapies*, 543 ADVANCES IN EXPERIMENTAL MED. AND BIOLOGY 293-322 (2003) (concluding that L-arginine promotes normal blood pressure); **(14)** A.J. Maxwell, et al., *Randomized trial of a medical food for the dietary management of chronic, stable angina*, 39(1) J. OF THE AM. COLL. OF CARDIOLOGY 37-45 (Jan. 2, 2002) (concluding that L-arginine improves vascular function for patients with angina); and **(15)** M. Amrani, *The effect of L-arginine on myocardial recovery after cardioplegic arrest and ischemia under moderate and deep hypothermia*, 96(9 Suppl.) CIRCULATION II 274-9 (Nov. 4, 1997) (concluding that L-arginine helps

1    recover after a heart attack).

2         An insert included with every package of Vydox contains a 100%
3    satisfaction guarantee. Vydox Label Insert. ("Label Insert", Ex. 3). This
4    guarantee is strictly enforced by Premium, which has paid over $600,000.00
5    worth of refunds to customers just this year. Testino Decl., Ex. 2, ¶ 19. Plaintiff
6    does not allege that he has asked for, nor has he asked for, a refund of his
7    purchase of Vydox. *Id.* at ¶ 33.

8         In making his determination to purchase Vydox, Plaintiff claims to have
9    "read, reviewed, relied upon, and believed the . . . claims made in the advertising
10   of Vydox, the product packaging, and the Vydox website." FAC ¶ 11. He cites
11   ten additional claims that he specifically relied upon, namely: (1) "Powerful &
12   Effective"; (2) "Male Virility Supplement"; (3) "Bigger, Firmer & Stronger
13   Erections"; (4) "Substantial Increase in Sexual Drive and Stamina"; (5)
14   "Increased Self Confidence"; (6) "Satisfaction for your Sexual Partner"; (7)
15   "Premium Formula = Premium Results"; (8) "Stronger Libido"; (9) "No Side
16   Effects"; (10) "Vydox was formulated around the same principles that Viagra,
17   Cialis, and Levitra were developed (decreasing PDE-5 enzyme levels), but with
18   an all-natural formulation." *Id.* at ¶ 12.

19        Plaintiff then categorically claims, "The preceding claims are false." *Id.* at
20   ¶ 13. This allegation is based in part on the fact that Plaintiff ingested Vydox as
21   directed, "but did not obtain the results promised." *Id.* at ¶ 17. It is also based on
22   Plaintiff's allegation that Premium's claims cannot be "substantiate[d]," and that
23   there is "no competent, reliable scientific research [that] can support Defendant's
24   claims." *Id.* at ¶¶ 13, 57.

25        Based on the above, Plaintiff asserts claims for violations of the
26   Consumers Legal Remedies Act, CAL. CIV. CODE § 1750, *et seq.* ("CLRA"),
27   California's False Advertising Law, CAL. BUS. & PROF. CODE § 17500, *et seq.*
28   ("FAL"), California's Unfair Competition Law, CAL. BUS. & PROF. CODE §

CHARLES T HUGGINS JR P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

CHARLES T HUGGINS JR PC
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

1   17200, *et seq.* ("UCL"), common law negligent misrepresentation, and common

2   law fraud on behalf of himself and a putative multi-state class of purchasers.

3   ## III.   LEGAL STANDARD

4          A motion to dismiss is the proper method for raising the issue of lack of

5   personal jurisdiction over the defendants pursuant to Rule 12(b)(2) of the Federal

6   Rules of Civil Procedure. *Senne v. Kan. City Royals Baseball Corp.*, No. 14-cv-

7   00608-JCS, 2015 U.S. Dist. LEXIS 66170, at *78 (N.D. Cal. May 20, 2015). If

8   properly raised, the Plaintiff has the burden of proof, not the defendant. *Pebble*

9   *Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Although the plaintiff

10  cannot simply rest on the bare allegations of its complaint, . . . uncontroverted

11  allegations in the complaint must be taken as true." *Schwarzenegger v. Fred*

12  *Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The Court applies the law

13  of California to determine whether personal jurisdiction exists. *See Kouba v.*

14  *Renzenberger, Inc.*, No. C10-159 TUC FRZ (GEE), 2010 U.S. Dist. LEXIS

15  135743 (D. Ariz. May 14, 2010). "Because California's long-arm jurisdictional

16  statute is coextensive with federal due process requirements, the jurisdictional

17  analyses under state law and federal due process are the same." *Dole Food Co. v.*

18  *Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002) (citing CAL. CIV. PROC. CODE §

19  410.10).

20         Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable

21  legal theory or the absence of sufficient facts alleged under a cognizable legal

22  theory." *Hana Fin., Inc. v. Hana Bank*, 500 F. Supp. 2d 1228, 1232 (C.D. Cal.

23  2007) (internal quotation marks omitted). To survive a motion to dismiss under

24  12(b)(6), "[f]actual allegations must be enough to raise a right to relief above the

25  speculative level," and the complaint must include "enough facts to state a claim

26  to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

27  555, 570 (2007). A complaint does not state a plausible claim to relief by making

28  "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556

1   U.S. 662, 678 (2009).

2     Rule 9(b) requires a plaintiff to make allegations "specific enough to give

3   defendants notice of the particular misconduct which is alleged to constitute the

4   fraud charged so that they can defend against the charge and not just deny that

5   they have done anything wrong." *Semegen v. Wedner*, 780 F.2d 727, 731 (9th

6   Cir. 1985). Thus, a complaint must set forth "an account of the time, place, and

7   specific content of the false representations as well as the identities of the parties

8   to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.

9   2007) (internal quotations omitted).

10  **IV.** **LEGAL ARGUMENT**

11   **A. Plaintiffs cannot establish that this Court has personal jurisdiction**

12    **over Premium.**

13    "For a court to exercise personal jurisdiction over a non-resident

14  defendant, that defendant must have at least 'minimum contacts' with the

15  relevant forum such that the exercise of jurisdiction 'does not offend traditional

16  notions of fair play and substantial justice.'" *Dole Food*, 303 F.3d at 1110-11

17  (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "In

18  judging minimum contacts, a court properly focuses on 'the relationship among

19  the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 783, 788

20  (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

21    Personal jurisdiction may be either general or specific. *See Bancroft &*

22  *Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). "A court

23  may assert general jurisdiction over foreign (sister-state or foreign-country)

24  corporations to hear any and all claims against them when their affiliations with

25  the State are so 'continuous and systematic' as to render them essentially at home

26  in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.

27  Ct. 2846, 2851 (2011). "In contrast to general, all-purpose jurisdiction, specific

28  jurisdiction is confined to adjudication of issues deriving from, or connected

C H A R L E S   T   H U G G I N S   J R   P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

with, the very controversy that establishes jurisdiction." *Id.* (citation and internal quotation marks omitted).

### 1. Plaintiffs cannot establish specific jurisdiction over Premium

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the "relationship among the defendant, the forum, and the litigation."'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977))). The exercise of specific jurisdiction "is consistent with due process" only where "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum state." *Id.*; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) ("the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state").

A court may exercise specific jurisdiction over a non-resident defendant where the following requirements are met:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.[2]

The plaintiff bears the burden of satisfying the first two prongs of the test for specific jurisdiction. *Id.* (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp.*

---

[2] *Dole Food*, 303 F.3d at 1111.

CHARLES T HUGGINS JR PC
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

CHARLES T HUGGINS JR PC
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

1  *v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). In a purported class action, specific

2  jurisdiction must be demonstrated by the named Plaintiff. *See, e.g.*, *AM Trust v.*

3  *UBS AG*, No. C-14-4125 PJH, 2015 U.S. Dist. LEXIS 10628, at *8 (N.D. Cal.,

4  Jan. 29, 2015) ("claims of unnamed class members are irrelevant to the question

5  of specific jurisdiction").

6      In the case sub judice, Premium concedes that it operates a website through

7  which its products are sold to California residents. Accordingly, the first prong of

8  the jurisdictional analysis, purposeful direction, appears to be satisfied. Where

9  Plaintiff's jurisdiction collapses, however, is the second prong. Premium did not

10  sell any products whatsoever to the named Plaintiff and had no involvement in

11  the sale of those products to the Plaintiff.

12      Premium advanced evidence and arguments in its first motion to dismiss

13  that clearly proved that Plaintiff never purchased any products from Premium.

14  Motion Br. [ECF No. 17] at 10:19-12:28. Rather than waiting for the Court to

15  make a ruling on Premium's motion to dismiss, Plaintiff invoked FED. R. CIV. P.

16  15(a)(1)(B) and amended his complaint to clarify the manner of purchase.

17  *Compare* Compl. ¶ 5 and FAC ¶ 5. However, Plaintiff's amendments fail to

18  satisfy the "but for" test necessary to satisfy the "arises out of" prong of the

19  jurisdictional analysis.

20      "The second prong of the specific jurisdiction test, which asks whether a

21  claim 'arises out of or relates to' the defendant's contacts with the forum, is

22  governed by a 'but for' test, that is, would the claims have arisen but for the

23  contacts with the forum." *Senne v. Kan. City Royals Baseball Corp.*, 2015 U.S.

24  Dist. LEXIS 66170, *151-152 (N.D. Cal. May 20, 2015) (citing *Doe v. Unocal*

25  *Corp.*, 248 F.3d 915, 924-25 (9th Cir. 2001); *see also Alexander v. Circus Circus*

26  *Enterprises, Inc.*, 939 F.2d 847, 853 (9th Cir. 1991), *withdrawn and superseded*

27  *on rehearing*, 972 F.2d 261 (9th Cir. 1992) ("[t]his circuit has already decided

28  that the critical focus in the 'arising out of' prong is whether, 'but for' the

defendant's forum-related activities, the injury would have occurred; that is, whether the 'entire course of events . . . was an uninterrupted whole which began with, and was uniquely made possible by, the [defendant's] contacts in [the forum state]'") (quoting *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 383-84 (9th Cir. 1990), *rev'd on other grounds by Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991)).

Premium cannot dictate to independent third parties who purchase its products the terms by which those third parties may resell them. 99% of the consumers who purchase Vydox do so through Vydox.com. Peil Decl., Ex. 4 ¶ 10. Those consumers are made party to a generous warranty and refund policy. Vydox Label Insert. ("Label Insert", Ex. 3). In exchange, those customers affirmatively agree to arbitrate any disputes that may arise between themselves and Premium. Peil Decl., Ex. 4 ¶ 10. Because Premium did not sell products directly to Plaintiff, it is not the "but for" cause of Plaintiff's acquisition of the product, and jurisdiction fails under the second prong.

Even after taking the time to amend his complaint, Plaintiff has still failed to identify the specific reseller that sold Vydox to him. Premium is thus left in the precarious situation of having to file an answer to the FAC without any knowledge as to potential affirmative defenses it may raise, including whether an arbitration clause bars the suit in its entirety. Moreover, because Premium never sold Vydox to Plaintiff Matus, it is being asked to answer for the alleged unfair business practices of an unknown reseller to Plaintiff—a man attempting to represent a putative nationwide class of people who also did not purchase products from Premium.

Because Plaintiff has failed to allege the identity of the supposed reseller of Vydox, or, for that matter, the location of the reseller's website, or when this supposed purchase actually took place, it is patently unfair under the third prong of the jurisdictional analysis to force Premium to answer in a California court for

CHARLES T HUGGINS JR PC
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

the actions of this unknown entity or individual. This Court should decline to exercise personal jurisdiction over Premium and dismiss this case so that it may be litigated in Georgia.

### 2. Plaintiffs cannot establish general jurisdiction over Premium

Having failed to establish personal jurisdiction over Premium, the only alternative left for Plaintiff is general jurisdiction. The standard for establishing general jurisdiction is "fairly high." *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986). A corporate defendant may be subject to general jurisdiction when its contacts with the forum "approximate physical presence." *Bancroft & Masters, Inc.*, 223 F.3d at 1086. Whether this standard is met turns on the "economic reality of the defendants' activities rather than a mechanical checklist." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1173 (9th Cir. 2006). The Supreme Court has made clear that general jurisdiction typically only applies for an individual at his domicile, and for a corporation at its principal place of business or place of incorporation. *Senne,* 2015 U.S. Dist. LEXIS 66170 at *88.

Premium is a Georgia limited liability company organized under the laws of the State of Georgia. Peil Decl., Ex. 4 ¶ 9. Its principal place of business is in Martinez, Georgia. *Id.* Its registered agent is its attorney, who is located in Evans, Georgia. *Id.* None of its officers or employees have ever traveled to California for business purposes, and it does not maintain an office in California. Testino Decl., Ex. 2, ¶ 11, 12. Premium markets its products through its website located at http://www.vydox.com. *Id.* at ¶ 13. It does not directly target sales toward California residents. *Id.* 1.4% of its total sales revenues are derived from sales to California residents. Id. at ¶ 14; FAC ¶ 9. By no stretch of the imagination is Premium "essentially at home" in California.

It should be noted, however, that even assuming Premium's products have been purchased by more than a few California residents, the sales revenues

C H A R L E S   T   H U G G I N S   J R   P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

CHARLES T HUGGINS JR PC
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

1    derived therefrom likely pale in comparison to sales revenues from Mercedes-

2    Benz vehicles sold to Californians, and are definitely less than the four million

3    dollars worth of helicopters sold to Texans – both of which the Supreme Court

4    found insufficient to establish general jurisdiction as a matter of law. *See Daimler*

5    *AG v. Bauman*, 134 S. Ct 746, 752 (2014); *Helicopteros Nacionales de Columbia*

6    *v. Hall*, 466 U.S. 408, 411, 418 (1984). Therefore, general jurisdiction cannot

7    serve as the basis for the Court to exercise personal jurisdiction over Premium.

8    **B. The Plaintiff's claims are insufficient, as pleaded, to sustain a claim**

9    **against Premium**

10       **1.  Plaintiff bases his claims for violations of the CLRA, FAL, and**

11           **UCL on a lack of substantiation argument that fails as a matter**

12           **of law.**

13       In analyzing a 12(b)(6) motion, a court generally cannot analyze materials

14   outside the pleadings. *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1

15   (9th Cir. 1998). However, documents "incorporated by reference in the

16   complaint, or matters of judicial notice" may be considered without "converting

17   the motion to dismiss into a motion for summary judgment." *U.S. v. Ritchie*, 342

18   F.3d 903, 908 (9th Cir. 2003).  Under this "incorporation by reference doctrine,"

19   "a court may consider evidence on which the complaint necessarily relies if: (1)

20   the complaint refers to the document; (2) the document is central to the plaintiff's

21   claim; and (3) no party questions the authenticity of the copy attached to the

22   12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.

23   2010) (internal quotation marks omitted). This rule mirrors FED. R. EVID. 106 in

24   that it allows one party to introduce the full text of a document which the other

25   party quotes only in part. *Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997).

26       Plaintiff specifically alleges in his FAC that he "read, reviewed, relied

27   upon, and believed the false claims made in the *advertising* of Vydox, the

28   *product packaging*, and the Vydox *website*." FAC at ¶ 11 (emphasis added). In

1  fact, because the statements contained in these three sources are alleged at

2  various times to be "false," "misleading," "outlandish" "fraud[ulent]"

3  "[in]competent" and "[un]reliable," the source of those claims is the very heart of

4  Plaintiff's FAC. FAC ¶¶ 1, 11, 13. Therefore, under the incorporation by

5  reference doctrine, the Court, in ruling on this 12(b)(6) motion, may consider all

6  of the claims published on (1) the advertising, (2) the product packaging, and (3)

7  the Vydox website; all of which are attached as exhibits hereto.

8         Plaintiff lumps the allegedly false claims into four distinct categories,

9  namely claims that Vydox increases (1) penis firmness, (2) sexual desire, (3)

10  sexual duration, and (4) sexual virility. FAC ¶ 12. What the Plaintiff overlooks,

11  however, is that all of those claims have been substantiated by clinical research,

12  which by Plaintiff's own admission, Plaintiff "reviewed" and "relied upon"

13  before purchasing Vydox. There are fifteen scientific studies provided on

14  Plaintiff's website which demonstrate the efficacy of Vydox. *L-Arginine*, Vydox,

15  http://vydox.com/pages.php?pID=7&CDpath=3 (last visited Oct. 25, 2015);

16  Vydox Clinical Studies, "Vydox Clinical Studies", Ex. 6).

17         Regardless of the published availability of these studies, claims based on a

18  lack of substantiation, rather than provable falsehood, are not cognizable under

19  the California consumer-protection laws. *See In re Clorox Consumer Litig.*, 894

20  F. Supp. 2d 1224, 1232 (N.D. Cal. 2012). "A claim can survive a lack of

21  substantiation challenge by, for example, alleging studies showing that the

22  defendant's statement is false." *Bronson v. Johnson & Johnson*, No. C 12-04184

23  CRB, 2013 U.S. Dist. LEXIS 54029, at *8 (N.D. Cal. Apr. 16, 2013). Pursuant to

24  the incorporation by reference doctrine, the court may consider the fifteen

25  specific scientific studies demonstrating that Vydox does what Premium claims it

26  does. Also incorporated is Premium's statement that it is committed to ensuring

27  that the studies are disseminated in full to any party who seeks details: "All

28  clinical studies referenced on this site, for Vydox ingredients, are REAL and are

CHARLES T HUGGINS JR P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

readily available for public viewing. Individual results when using Vydox may vary from those provided on this site." VYDOX, http://www.vydox.com (last visited Oct. 25, 2015); Vydox Clinical Studies, Ex. 6.

Plaintiff has not pleaded the existence of a single scientific study that suggests that Premium's claims about Vydox are false. This is all the more troubling because all of Plaintiff's claims are at their core lack of substantiation claims. While Plaintiff may at times characterize the claims as "false," the FAC elaborates that Premium "cannot substantiate claims that Vydox produces results," "cannot substantiate claims that Vydox increases penis size," and that there is "no competent and reliable evidence" supporting Premium's claims about Vydox. FAC ¶ 13.  Plaintiff is thus attempting to mask his unallowable lack of substantiation claim under the cheap veneer of his fraud claim.

Moreover, his attempts to overcome this pleading deficiency are not cured by his citation to a statement made on the Federal Trade Commission's website in his FAC. FAC ¶ 13. Plaintiff misquotes the FTC in his FAC and rewrites the statement to suggest that herbal and natural substances are ineffective "for male enhancement." *Id.* The actual quotation reads, "[t]o date, no 'herbal' or 'all natural' substance has been shown to be an effective treatment **for ED [erectile dysfunction]**." *Phony Cures for Erectile Dysfunction*, FEDERAL TRADE COMMISSION,   http://www.consumer.ftc.gov/articles/0202-phony-cures-erectile-dysfunction (last visited Oct. 25, 2015) (emphasis added).

First, this is a quotation from a website which gives general information to the public, and does not constitute one of the required "studies showing that defendant's statement is false" in order to meet Plaintiff's pleading burden. As a matter of law, then, Plaintiff has failed to sufficiently plead a violation.

Second, the statement itself is irrelevant to this case. Plaintiff does not allege Premium claims to cure erectile dysfunction, and Premium does not make such a claim. Rather, Premium makes statements in line with published scientific

CHARLES T HUGGINS JR PC
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

1  evidence on which Plaintiff relied when purchasing Vydox. For instance,
2  Premium claims that Vydox users will have a "Stronger Libido" with "No Side
3  Effects." Premium took this language right out of the actual scientific studies. *See*
4  T. Klotz, et al., *Effectiveness of oral L-arginine in first-line treatment of erectile*
5  *dysfunction in a controlled crossover study*, 64(4) UROLOGIA INTERNATIONALIS
6  220-23 (1999) (finding that in 20% of study patients, L-arginine led to *a*
7  *significant improvement in sexual dysfunction* and that in all patients *no adverse*
8  *effects occurred*).

9       Third, Plaintiff does not allege, nor can he, that all reasonable experts agree
10 about the ineffectiveness of Vydox. In order to succeed "on a theory that
11 representations are proven to be false, plaintiffs must allege that all reasonable
12 experts in the field agree that the representations are false." *Brown v. GNC Corp.*,
13 789 F.3d 505, 516 (4th Cir. 2015). Defendants are able to dispense with frivolous
14 lawsuits at the pleading stage for sound policy reasons. "It is unfair to consumers
15 who wish to gamble that [the supplement] *may* be effective if lay juries can
16 effectively ban the sale of [the supplement] simply because the evidence of [its]
17 effectiveness is inconclusive." *Id.* at 512. (emphasis added). That is exactly this
18 situation.

19      Fourth, and perhaps most fatal to Plaintiff, all of the scientific evidence
20 contained on Premium's website can be incorporated into Plaintiff's complaint,
21 as stated above. Thus, Plaintiff's (ironic) utter lack of substantiation for his lack
22 of substantiation claims has led him to plead in such a way that requires the Court
23 analyze Premium's cited studies and disregard Plaintiff's claims. While there is
24 no need to rehash verbatim what those studies show, some highlights are in order.
25 The studies conclude, inter alia, that (1) L-arginine, a component of Vydox,
26 improves blood flow to the genitals, dilates blood vessels, and helps to enlarge
27 the penis to its full capacity, in essence increasing penis firmness; (2) L-arginine
28 and yohimbine taken together, components of Vydox, substantially increase

sexual arousal and desire; and (3) extracts of ginseng, gingko, damiana, L-arginine, multivitamins, and minerals, components of Vydox, increase sexual desire, frequency of intercourse, frequency of orgasm, and clitoral sensation, in essence increasing sexual duration and sexual virility. Jonathan Wright, M.D., *Maximize your vitality & potency for men over 40*, SMART PUBLICATIONS, 225 (1999) (available at http://www.smart-publications.com/articles/l-arginine-the-prosexual-nutrient-with-numerous-health-benefits#fn-ref-360-2); T.Y. Ito, et al., *A double-blind placebo-controlled study of ArginMax, a nutritional supplement for enhancement of female sexual function*, 27(5) J. OF SEX AND MARITAL THERAPY 541-9 (Oct.-Dec. 2001); and C.M. Meston and M. Worcel, *The effects of yohimbine plus L-arginine glutamate on sexual arousal in postmenopausal women with sexual arousal disorder*, 31(4) ARCHIVES OF SEXUAL BEHAVIOR 323-32 (Aug. 2002). Which is of course, to say, that all of the claims Plaintiff allege are false, are verified by scientific studies Plaintiff claims to have read.

### 2. Plaintiff's remaining claims are for mere puffery, and are not actionable under the UCL

Superlative adjectives indicating that a product is "premium," "maximum," the "best technology," "far brighter," and/or of "high" or "superior quality" are superlative adjectives that are typical of puffery. *See, e.g.*, *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). Plaintiff has alleged that he was deceived by ten additional specific statements, aside from others contained on the Vydox website, packaging, and advertising. Of those ten statements, three can be dismissed outright: namely "Powerful & Effective," "Increased Self-Confidence," and '"Premium Formula = Premium Results." To the extent that these two statements promise anything at all, the promises are incomprehensible adspeak that is designed as puffery.

The four statements, "Male Virility Supplement," "Substantial Increase in Sexual Drive and Stamina," "Satisfaction for your Sexual Partner," and "Stronger

CHARLES T HUGGINS JR P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

Libido, " all fit into the sexual virility and sexual duration categories mentioned above. As such, these statements have been verified as true by medical studies that were provided to Plaintiff.

"Bigger, Firmer & Stronger Erections" has similarly been proven true by scientific studies. Jonathan Wright, M.D., *Maximize your vitality & potency for men over 40*, SMART PUBLICATIONS, 225 (1999) (available at http://www.smart-publications.com/articles/l-arginine-the-prosexual-nutrient-with-numerous-health-benefits#fn-ref-360-2). As has "No Side Effects." T. Klotz, et al. *Effectiveness of oral L-arginine in first-line treatment of erectile dysfunction in a controlled crossover study*, 64(4) UROLOGIA INTERNATIONALIS 220-23 (1999) (finding that in 20% of study patients, L-arginine led to a significant improvement in sexual dysfunction and that in all patients no adverse effects occurred).

Having dispensed with these statements, the only remaining claim is "Vydox was formulated around the same principles that Viagra, Cialis, and Levitra were developed (decreasing PDE-5 enzyme levels), but with an all-natural formulation." Plaintiff's aversion to this statement seems to be rooted in the belief that the statement misleads people into believing that Vydox belongs in the same category as Viagra or Cialis. FAC ¶ 17. Setting aside the fact that this statement is absolutely true, Plaintiff's argument ignores several statements on the Vydox website which carefully distinguish Vydox from Viagra. For instance, Premium's website states:

> Like the drug sildenafil citrate (Viagra™), L-Arginine is thought to enhance the action of nitric oxide and—in turn—relax the muscles surrounding blood vessels supplying the penis. . . . The difference in how they work is that Viagra blocks an enzyme called PDE5, which destroys nitric oxide, and L-Arginine is used to make nitric oxide. Unlike Viagra™, L-Arginine is taken on a daily basis for erectile dysfunction. *Ingredients*, VYDOX, http://www.vydox.com/pages.php%3FpID%3D8%26 (last visited Oct. 25, 2015).

CHARLES T HUGGINS JR P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

CHARLES T HUGGINS JR P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

There is no doubt that Viagra is a drug that has been clinically proven to treat erectile dysfunction. The generic name, sildenafil citrate, is virtually unknown; rather, the name "Viagra" has become synonymous with erectile dysfunction. If this were a trademark action, Viagra would undoubtedly be determined to be a famous mark. See, e.g., *Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 525 (S.D.N.Y. 2009). However, Plaintiff is not Pfizer, this is not a trademark action, and most importantly, there are consumers that for a whole host of reasons cannot take Viagra.[3] Vydox is specifically marketed toward those consumers. There is nothing actionable about marketing a product toward a niche market of consumers. And, as the *Brown* court cited above made clear: it is not the function of a lay jury to deprive consumers of the right to purchase alternatives to prescription medicines. *Brown v. GNC Corp.*, 789 F.3d 505, 512 (4th Cir. 2015).

Regardless of the ultimate veracity of the above statements, Plaintiff has not met his pleading burden. Plaintiff has opted to plead that the statements made by Vydox are patently false. In order to succeed "on a theory that representations are proven to be false, plaintiffs must allege that all reasonable experts in the field agree that the representations are false." *Id.* at 516. Many plaintiffs have attempted to plead just that about L-arginine products, and none have been successful. At least those other plaintiffs attached some studies to their complaints to at least try to meet that burden. Plaintiff has not and cannot cite to a single study suggesting that any of Premium's claims about Vydox are false. As a result, Plaintiff's conclusory allegation that Premium's claims are "false" should be given no weight, and Plaintiff's case should be dismissed.

### 3. Plaintiff has not alleged an injury in fact, a necessary element

[3] On its website, Viagra lists those with heart problems, those who have had heart surgery, a stroke, those with low blood pressure, sickle cell anemia, multiple myeloma, leukemia, etc. *What are possible side effects?*, VIAGRA, https://www.viagra.com/learning/ what-are-possible-side-effects (last visited Oct. 25, 2015).

CHARLES T HUGGINS JR P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

**under the CLRA, FAL, and UCL (Counts I-III, respectively)**

The California consumer protection statutes require the Plaintiff to sufficiently allege that a defendant's conduct caused the plaintiff to suffer actual injury. The CLRA, FAL, and UCL each restrict private actions to individuals who have suffered injury or damage "as a result of" the alleged misconduct. CAL. CIV. CODE § 1780(a); CAL. BUS & PROF. CODE § 17204; *id.* § 17535.

Here, the FAC sets forth no facts to show how any of the claims the Plaintiff alleged he relied upon turned out to be false. A class representative must demonstrate actual reliance on the allegedly deceptive statements to sustain an action under the UCL. *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009). While Plaintiff Matus alleged that he relied on all sorts of statements, he did so in the broadest, most conclusory way possible: "Prior to purchasing Vydox, Plaintiff read, reviewed, relied upon, and believed the false claims made in the advertising of Vydox, the product packaging, and the Vydox website." FAC ¶ 11. This statement is entitled to no weight in this motion. As the Supreme Court has made clear, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 679.

The only information that the Defendant, and indeed the Court, has to determine what is so false about Premium's claims is Plaintiff's threadbare recital that they are false. Which statements does Plaintiff believe are false? Plaintiff has pleaded that the statement "No Side Effects" is false. FAC ¶ 12. Did he experience some deleterious side effect, contrary to Premium's (scientifically-backed) assertion that Vydox causes no side effects? Or perhaps taking the product led to a decrease in his self-confidence, contrary to Premium's claim that Vydox leads to "Increased Self Confidence." Or even better, maybe his sexual partner was not satisfied, contrary to Premium's claim that Vydox can help. Does he have a sexual partner? What is that person's name? What testimony will this person provide?

C H A R L E S   T   H U G G I N S   J R   P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

1       Plaintiff's FAC is the nail in the coffin of his standing issue. Plaintiff

2   claims in his FAC that Premium makes "false advertising claims in an effort to

3   lure unwary consumers into paying an inflated price for a worthless product."

4   FAC ¶ 13. Plaintiff then states in defense of his FAC that it would have been

5   illogical for him to pay such an inflated price, and therefore he purchased Vydox

6   for "considerably cheaper through a reseller." Plaintiff's Opposition [ECF No.

7   21] at 5:18-23. Plaintiff wants it both ways. In one breath he is essentially

8   claiming that the alleged misrepresentations were not sufficient for him to

9   purchase Vydox at its regular price, and in the other he is claiming they were

10  sufficient to roll the dice with a cheaper alternative source. Plaintiff's actions here

11  directly contradict the reliance prong.

12      Setting aside the fact that it is also Plaintiff's burden to allege whether

13  reliance on these claims is justifiable at all, which is dubious as a matter of law,

14  the fact is that Plaintiff has not pleaded facts, but legal conclusions—conclusions

15  which this Court should give no consideration.

16      The basic requirements for standing under the UCL, FAL, and CLRA are:

17  (1) a deprivation of money, and (2) a showing that said money was deprived by

18  relying on the false advertising. *See Kwikset Corp. v. Superior Court*, 246 P.3d

19  877 (Cal. 2011). However, Plaintiff has alleged that it would be illogical for

20  anyone to pay an inflated price for a product bearing false claims and, therefore,

21  he did not. Plaintiff thus failed to rely.

22      Moreover, subsequent courts characterize the *Kwikset* holding as follows:

23  "persons who can **truthfully** allege they were deceived by a product's label into

24  spending money to buy the product, and would not have bought it otherwise,

25  have lost money or property within the meaning of the UCL, and thus have

26  standing to sue." *Hill v. Roll Internat. Corp.*, 128 Cal. Rptr. 3d 109, 117 (Cal.

27  App. 1st Dist. 2011) (emphasis added). The key word is, of course, "truthfully."

28  It is true that Plaintiff has at least cursorily pleaded in his FAC that he relied upon

Premium's false claims about Vydox. *See, e.g.*, FAC ¶¶ 13, 28. However, his pleadings are not truthful. As all of his other claims are analyzed *vis a vis* the necessarily incorporated scientific evidence, it becomes clear that there was no deception. At best then, Plaintiff is left with a claim that Vydox did not work for him. That is not a claim sufficient for standing to bring suit, for if it were, anyone who claimed that aspirin failed to cure her headache would have standing to sue. Plaintiffs' claims under the CLRA (Count I), FAL (Count II), and UCL (Count III) should therefore be dismissed.

### 4. Plaintiff's negligent misrepresentation claim (Count IV) fails because he has made no plausible factual allegations that Defendant's claims are unsubstantiated

Negligent misrepresentation is a separate and distinct tort, a species of the tort of deceit. "Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit." *Bily v. Arthur Young & Co.*, 834 P.2d 745, 769 (Cal. 1992); CAL. CIV. CODE § 1710, subd. 2 ("[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true").

Plaintiff provides no factual support for his assertion that Premium was negligent in making the claims it has made about Vydox. Putting aside for the moment that Plaintiff has not pleaded any facts demonstrating how such statements are in fact false, because of the incorporation by reference doctrine, Plaintiff has inadvertently included with his FAC scientific studies which demonstrate the exact opposite conclusion. Plaintiff's sweeping legal conclusion that "no competent, reliable scientific research can support Defendant's claims and is actually contrary to Defendant's claims" should be given no weight by the Court. FAC ¶ 57. Rather, the scientific studies incorporated into Plaintiff's FAC, *i.e.* actual facts that the Court may actually consider, render the Plaintiff's

CHARLES T HUGGINS JR PC
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

negligent misrepresentation claim invalid as a matter of law, and should therefore be dismissed.

**C. All of Plaintiff's claims sound in fraud, but the FAC does not satisfy Rule 9(b)**

Finally, the FAC fails to meet the heightened pleading standard for fraud-based claims under Rule 9(b), which requires parties to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). "Rule 9(b)'s heightened pleading standards apply to CLRA and UCL claims . . . because those claims are grounded in fraud or sound in fraud." *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011); See also *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009). Thus, Counts I, II, and III can be lumped together with Count V (common law fraud) and examined under the same level of scrutiny.

The FAC fails to plead even its most fundamental allegations with particularity, and these failures debilitate Premium's ability to defend itself. As mentioned above, Plaintiff does not allege when he purchased Vydox, the identify of the retailer, or the address of the website at which he purchased Vydox. Premium thus cannot know, for instance, whether the purchase was made within the statute of limitations applicable to Plaintiff's claims, what its advertising or marketing consisted of at the time the purchase was made, what policies or procedures it had in place at that time, or which distribution channel was responsible for Plaintiff coming to be in possession of its product. The FAC is similarly devoid of allegations concerning: (1) the medium through which the specific advertising statements Plaintiffs actually saw, heard, or read were delivered to Plaintiff; (2) what specific, if any, impact those statements had on Plaintiff's purchasing decisions; and (3) how Plaintiff came to determine that

C H A R L E S  T  H U G G I N S  J R  P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

CHARLES T HUGGINS JR P C
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

these specific statements were false.

Rather, all of Plaintiff's claims boil down to the statement, "Vydox didn't work for me, so Premium's claims must be false!" That is not a sufficient answer to the "how" question, *i.e.* how does the Plaintiff know the claims are false? The complete and utter lack of specificity in Plaintiff's allegations prevents Defendant from preparing its defenses, and warrants the dismissal of all claims asserted against it. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009).

In these circumstances, Federal Rule 9(b) warrants dismissal of all claims.

## V. **CONCLUSION**

For the foregoing reasons, Premium respectfully requests that the Court grant this Motion and dismiss the FAC in its entirety.

Respectfully, submitted,

Dated: October 25, 2015 **CHARLES T. HUGGINS, JR., P.C.**

By: s/ Jeffrey F. Peil
Jeffrey F. Peil (Georgia Bar No. 967902)
jpeil@hugginsfirm.com
7013 Evans Town Center Blvd., Suite 502
Evans, Georgia 30809
Telephone: (706) 210-9063
Facsimile (706) 210-9282
Admitted Pro Hac Vice

*Attorney for Defendant Premium Nutraceuticals, LLC*

**CHARLES T HUGGINS JR P C**
7013 Evans Town Center Blvd., Suite 502
Evans, GA 30809

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**CERTIFICATE OF SERVICE**</u>

    I, Jeffrey F. Peil, certify that on October 25, 2015, the foregoing **Notice of Motion, Motion to Dismiss First Amended Complaint, and Memorandum of Points and Authorities in Support Thereof** was filed electronically in the Court's Electronic Filing System ("ECF"); thereby upon completion the ECF system automatically generated a Notice of Electronic Filing as service through CM/ECF to the registered e-mail address of all parties of record in this case.

By: <u>s/ Jeffrey F. Peil</u>

Jeffrey F. Peil (Georgia Bar No. 967902)