JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MATUS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>PREMIUM NUTRACEUTICALS, LLC, a Georgia Corporation,<br><br>    Defendants. | Case No. EDCV 15-01851 DDP (DTBx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>[Dkt. 24] |

Presently before the court is Defendant Premium Nutraceuticals, LLC ("Premium")'s Motion to Dismiss. Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following Order.

**I. Background**

Premium is a limited liability corporation incorporated in Georgia. (Declaration of Jeffrey F. Peil ¶ 9). Premium's principal place of business is also Georgia. (First Amended Complaint ("FAC") ¶ 6.) Premium manufactures, markets and sells Vydox, a dietary

supplement with a daily male performance formula. (FAC ¶¶ 1,6.) Premium markets its product through its website. (Declaration of Joseph Testino ¶ 13.) 1.4% of Premium's total sales revenue is "derived from the sale of products" to California residents. (Id.) Premium markets Vydox to nine resellers who in turn market the products to consumers. (Testino Decl. ¶ 30.) The resellers do not have brick and mortar stores, but rather maintain their own websites, each with their own unique claims about the efficacy of Vydox. (Id.) The resellers account for around 1.9% of all sales of Vydox. (Id.)

Plaintiff Robert Matus ("Matus") is a California resident. (FAC ¶ 5.) He purchased Vydox for his personal use through a third-party reseller. (Id.) Matus alleges that Premium's claim of Vydox's efficacy are inaccurate and not properly substantiated. Matus sued in state court, on behalf of a putative class, for violations of California's Consumers Legal Remedies Act, Advertising Law, California Business and Professions Code § § 17200 et seq., and negligent misrepresentation. Premium removed to this court, and now moves to dismiss.

**II. Legal Standard**

Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a suit for lack of personal jurisdiction. The plaintiff has the burden of establishing that jurisdiction exists. See Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990). Where, as here, the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." Caruth v. International Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1977); Pebble

2

1  Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). "Although
2  the plaintiff cannot simply rest on the bare allegations of its
3  complaint, uncontroverted allegations in the complaint must be
4  taken as true." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d
5  797, 797 (9th Cir. 2004) (internal quotations and citation
6  omitted). Conflicts between parties over statements contained in
7  affidavits must be resolved in the plaintiff's favor. Id.

**III. Discussion**

District courts have the power to exercise personal jurisdiction to the extent authorized by the law of the state in which they sit. Fed. R. Civ. P. 4(k)(1)(A); Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). Because California's long-arm statute authorizes personal jurisdiction coextensive with the Due Process Clause of the United States Constitution, see Cal. Civ. Code § 410.10, this court may exercise personal jurisdiction over a nonresident defendant when that defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Schwarzenegger, 374 F.3d at 800-01 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The contacts must be of such a quality and nature that the defendants could reasonably expect to be "haled into court there." World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980).

A. General Jurisdiction

Personal jurisdiction may be either general or specific. Gator.Com, 341 F.3d at 1076. "General jurisdiction exists when there are substantial or continuous and systematic contacts with

3

the forum state, even if the cause of action is unrelated to those contacts." Id. "The standard for establishing general jurisdiction is fairly high" Id. (citations omitted). "The contacts with the forum state must be of a sort that approximate physical presence." Id. "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Id. at 1076-77 (citations omitted). The court focuses on "the economic reality of the defendants' activities rather than a mechanical checklist." Id. "Even if substantial, or continuous and systematic, contacts exist, the assertion of general jurisdiction must be reasonable." Id.

Here, Premium argues that its contacts with California are insufficient to establish general jurisdiction. Premium argues that Premium has less contact with California than the defendants in Daimler AG v. Bauman, 134 S. Ct. 746 (2014) and Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408 (1984), cases where the Supreme Court found defendants' sales were insufficient to establish general jurisdiction. (Mot. Dismiss at 9.) Plaintiff appears to concede as much, arguing that the issue is whether the Court has specific jurisdiction over defendant. (Opp. at 2-3).

The court agrees with Premium that general jurisdiction is lacking here. Lack of physical presence alone, of course, is not dispositive. In Gator.com, for example, general jurisdiction existed even though the defendant had "few of the factors traditionally associated with physical presence, such as an official agent or incorporation." 341 F.3d at 1078. Defendant had

4

"extensive marketing and sales in California, [] extensive contacts with California vendors, and . . . its website [was] clearly and deliberately structured to operate as a sophisticated virtual store in California." Id.  Defendant "also mailed a substantial number of catalogs and packages to California residents, targeted substantial numbers of California residents for direct email solicitation, and maintained substantial numbers of 'on-line' accounts for California consumers . . . . California residents [could] view and purchase products on-line as well as interact with [defendant's] customer service representatives 'live' over the internet if they have questions or concerns." Id.

Here, Premium's contacts with California are nowhere near as systematic and continuous as the defendant's contacts in Gator.com. Indeed, its only apparent contact with California is via its website, which appears to generate only 1.4% of Vydox sales revenue from sales to California residents.[1]  Accordingly, this court does not have general jurisdiction over Premium.

B. Specific Jurisdiction

The Ninth Circuit applies a three prong test to establish specific jurisdiction.

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

---

[1] It is somewhat unclear whether this figure refers to direct sales or includes sales to or through third-party resellers.

```
        (3) the exercise of jurisdiction must comport with fair play
            and substantial justice, i.e. it must be reasonable.
```

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004.

The "plaintiff bears the burden of satisfying the first two prongs of the test." Id. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id.

       1. Purposeful availment

The Plaintiff must show that Premium "purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California."[2] Id. The phrase 'purposeful availment' is often used in "shorthand fashion, to include both purposeful availment and purposeful direction." Id. However, "availment and direction are [] two distinct concepts. A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." Id.

Here, Plaintiff alleges violations of the Consumers Legal Remedies Act, violations of the California's False Advertising Law, violations of the California Business and Professions Code §§ 17200 et seq., and negligent misrepresentation. (Complaint.) Therefore, the court will apply a purposeful direction analysis. See Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128

---

[2] "A showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." Fred Martin Motor Co., 374 F.3d at 803.

6

(9th Cir. 2010) (applying purposeful direction to a false advertising claim).

The Court evaluates "purposeful direction under the three-part 'effects' test traceable to the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984)." Fred Martin Motor Co., 374 F.3d at 803. The effects test requires that defendant allegedly have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Id.

### i. Intentional Act

The Court construes "'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world." Id. at 806. In Fred Martin, the Court held that placing an ad in a journal was an intentional act. Id. Here, the parties to not dispute that Premium intentionally created and maintains a website with the intent of selling Vydox. Accordingly, Premium has committed an intentional act.

### ii. Expressly aimed at forum

As the Ninth Circuit has recognized, courts "have struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed." Mavrix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1229 (9th Cir. 2011). One case from the earlier days of internet commerce drew a distinction between "passive" websites and "interactive" sites, on which "users can exchange information with the host computer," and looked to the "level of interactivity and commercial nature of the exchange of

7

information" in determining whether to exercise personal jurisdiction. Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997). In more recent years, cases have focused on whether a defendant did "something more" than maintain a passive website. See Mavrix, 647 F.3d at 1229. That "something more" might take into account the interactivity of a website, but may also look to "the geographic scope of the defendant's commercial ambitions" or "whether the defendant 'individually targeted' a plaintiff known to be a forum resident." Id. (citations omitted).

Here, the First Amended Complaint includes no specific allegations about the operation of Premium's website. Although the parties appear to agree that the website is interactive, as consumers can make purchases from the website, "that a website is commercial in nature and interactive does not necessarily mean there is personal jurisdiction." DFSB Kollective Co. Ltd. v. Bourne, 897 F.Supp.2d 871, 881 (N.D. Cal. 2012) (citing be2 LLC v. Ivanov, 642 F.3d 555, 559 (7th Cir. 2011) ("If the defendant merely operates a website, even a highly interactive website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution.")). Nor can this court discern from either the FAC or Plaintiff's opposition any indication that Premium took other efforts to target California consumers. See DFSB Kollective, 897 F.Supp.2d at 881-882 (distinguishing cases where defendants tailored website policies to comply with California law, targeted customers based on consumer-provided zip code information, hosted advertisements directed at California residents, or focused on California-based industries). Absent

8

"something more" than the maintenance of a minimally interactive website, Plaintiff has not met its burden to satisfy even the purposeful availment prong of the specific jurisdiction test.

2. Defendant's forum-related activities

Even if Plaintiff had satisfied the purposeful availment prong, he would still carry the burden of showing that his claim arises out of or relates to the defendant's forum-related activities. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d at 802. Courts utilize a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction.[3] Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). Plaintiff must demonstrate that 'but for' Defendant's contacts with California, his claim would not have arisen. Saavedra v. Albin Mfg. Corp., No. 10CV2312 L POR, 2011 WL 3664402, at *4 (S.D. Cal. Aug. 19, 2011).

Premium argues that Plaintiff cannot establish that his claims arise out of Premium's forum-related activities. Premium did not directly sell any product to Plaintiff. (Testino Decl. ¶ 29.) Plaintiff purchased Vydox through an unnamed reseller. (FAC ¶5.) Although Premium appears to concede that some of its resellers sell to California residents, Plaintiff has not made any showing of the extent of such sales, nor identified the reseller from who he

---

[3] The California Supreme Court rejected the "but for" in Snowney v. Harrah's Entm't, Inc., 35 Cal. 4th 1054, 1068 (2005). However, "[i]n determining the limits of federal due process, the Court analyzes federal case law, and most importantly, the law of the United States Supreme Court and the Ninth Circuit Court of Appeals." Langlois v. Deja Vu, Inc., 984 F. Supp. 1327, 1336 (W.D. Wash. 1997).

9

obtained Defendant's product.[4]  Plaintiff has not, therefore, met his burden to satisfy the "arises out of" prong of the specific jurisdiction test.

**IV. Conclusion**

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED.

IT IS SO ORDERED.

Dated: May 31, 2016

DEAN D. PREGERSON
United States District Judge

---

[4] Indeed, Plaintiff devotes but a single sentence of his opposition to this prong, conclusorily stating, "Similar to Snowney, the instant case arises out of Defendant's contacts with California.  This assertion is insufficient to carry Plaintiff's burden.  See also note 3, supra.

10